And Roxanne de Villa takes the Color. No opposing council. Oh, on line. Is it online? No. I'm sorry, Pam, what did you say? I'm sorry, I can't hear you. OK. She'll go check. We don't have any money online, do we? No, we don't. We can just go to the next case and hear it first, I think. Yeah. We can move to the next case and hear it first, and then see if the person shares it. OK. I've had this happen before, where somebody's in the lounge, and she says, Lord, you're very kind of you. You've mentioned the Lord's name. Why do we have to send somebody to get you? Here we go. Oh, OK. It's a very notification-like webinar. I couldn't see the list. OK, thank you, Pam. I appreciate it. All right, let's let the opposing council get all settled here, just for a second. We've got plenty of time. OK. Mr. Ebelin. Thank you, Your Honor. It pleases the court, Charlie Ebelin for ADT. This court should not create a circuit split by extending the Supreme Court Vaden case to apply to a diversity of citizenship cases, specifically the question of whether there is complete diversity. Three other federal circuit courts have addressed this issue, and all three of them have held that Vaden does not apply to diversity cases. It's limited to federal question jurisdiction. And this all traces back to a couple of strong policy arguments. The first is a 1983 Supreme Court case, the Moses case. And the Eighth Circuit, specifically in the North Port matter, spent significant time discussing how the foundational premise of the Moses case should extend and ensure that, even after Vaden, Vaden does not extend to diversity cases. And that's because if you went back and you applied Vaden's look-through approach to the facts of the Moses Cone case, it would mean that the Supreme Court, the Fourth Circuit, and the district court in the Middle District of North Carolina failed to properly assess subject matter jurisdiction. And the Eighth Circuit further noted that sub salientio, the Supreme Court does not overrule its prior precedent, and therefore concluded that there was nothing about Vaden which involved, if you did a look back, it would have found that there was not complete diversity of citizenship. So the Eighth Circuit discussed that. Then there's another foundational tenet out of the Swain case. And what Swain says is, in addition to adopting the same reasoning from Northport, is that there's really a policy driver that should restrict diversity cases from applying the look-through approach. And that is because there's a strong policy in favor of the Federal Arbitration Act. And it would be very easy to form select simply by filing a lawsuit in state court and naming individual defendants or state-based defendants in order to defeat federal diversity jurisdiction when an FAA case is brought in federal court. And those holdings from the other three Federal Circuit courts are in no way inconsistent with the precedent of this court. There have been a couple recent cases under the FAA where this court has applied Vaden's approach outside of strictly of the Section 4 FAA provision. There was a recent case in 2020 called Quezada, where this court said that Vaden's look-through approach should also apply in a federal question case to Section 9, 10, and 11 FAA cases. There's something noteworthy, though, about the analysis of Quezada that I believe supports not extending Vaden to diversity cases. And that is, Quezada noted that there was a circuit split related to whether the look-through approach would apply to Sections 9, 10, and 11 of the FAA. And in looking at that and assessing the circuit split, it aligned with, among others, the Second Circuit and the Fourth Circuit. Let's just assume, though, that we decide otherwise and we extend Vaden to diversity cases. That's not the end of your case, right? Because then we would look to the parties to the arbitrable dispute, and there would be diversity. Isn't that right? Yeah, I think that's true. I mean, there is no complete diversity of citizenship in the as-filed state court action. But I think that approach is true. Of course, our primary argument is that this court should not It's not supported either by the Moses Cone case and the other three federal circuits have reached the correct conclusion. To return to Quezada, which is the most recent FAA case that dealt with Vaden in this circuit, as I was saying, the court in Quezada chose to follow the circuits, the Second Circuit, the Fourth Circuit, and the Third Circuit. And the Second Circuit and the Fourth Circuits are two of the circuit courts that have elected not to extend Vaden to diversity and citizenship questions. So I think a takeaway from the recent Quezada case is that, for different purposes, federal circuit courts do apply the look-through approach, and in other circumstances, they don't. And like I said, the policy reasons behind why the other three federal circuits have not extended Vaden to diversity of citizenship cases are strong and well-discussed in both the Eighth Circuit and the Second Circuit. Swain matter. Let me ask you, it's a little bit of a different question. There's another case involving this same situation with ADT, the Madison case. And that was allowed under CAFA and so on and so forth. Does that affect your case? I mean, because that's going to be, I realize it's not, at least to my knowledge, not yet certified. But it might be. And so would that affect you all's case? I suppose down the road it could. It certainly doesn't impact the jurisdictional questions before the court. As Your Honor recognized, there were two pending appeals related to the Madison case, one of which was set for argument last month that was functionally rendered moot by this court's CAFA decision, which vested jurisdiction with the district court under CAFA. And then the parties voluntarily dismissed the remaining dismissal of the petition for arbitration in the Madison case. But sure, on down the road, to the extent that there are parallel cases arising from the same fact pattern, although I would treat this, practically speaking, as an opt-out case because they filed their own separate action. Right now Madison is filed as a putative class action. But if that's certified as a class, you all could still join. The fact that you have your own lawsuit doesn't mean you have to opt out, does it? Well, that would be a question for the Richmonds. Yeah, that would certainly be an option they would have, would be to. And you just don't know how that's going to play out. You're saying it could be mooted someday, but it's not yet. That's correct. And for that matter, Your Honor, there's another putative class action in the Southern District of Florida that's currently pending as well. There are several actions related to the actions of this individual installer that could potentially have some overlap depending on what individual plaintiffs and their attorneys choose to do as part of their case strategy. But for right now, there's nothing, in particular about this appeal, that has any carryover issues to any of the other cases. If the panel has no other questions at this time, I'll reserve the rest of my time for rebuttal. Thank you, Mr. Edlund. Mr. Wangler. Good morning, Your Honors. May it please the Court. My name is Ryan Wangler, and I represent the Richmond family in this matter, Appelese. Do you want to address that since we just finished that discussion with your opponent, who obviously doesn't know what your clients are planning to do? Do you have a view on whether the Madison case moots this one or will moot it because they may join it? I expect that the Richmonds will opt out. The district court below reached the correct decision by holding that the Vaden look-through test must be applied to confirm complete diversity of the parties in order to assert subject matter jurisdiction. This means the court must look past the federal petition asking the court to compel arbitration and look to the underlying controversy between the parties. Here, that is the Richmond family's original state court petition. Because the parties are not completely diverse, the federal courts lack subject matter jurisdiction, and the district court rightfully dismissed ADT's federal petition. Ultimately, this comes down to that. That kind of really begs the question, because at that point, it becomes a question of arbitration. And between the parties to the arbitration agreement, there's obviously diversity. You agree with that, do you not?  is no based on the language of Vaden. Well, let me, actually, there was two parts to it, and I wasn't trying to get you to agree to both parts. But if, in fact, we looked only to the parties to arbitration, there is diversity. If you only look to the parties involved in the arbitration, they would be diverse parties. That's correct. However, if we go a step further and we look at the language of Vaden, and also in particular to Taylor versus Anderson, which kind of explains that Vaden language a little bit further, it's about the controversy arising between the parties. Justice Ginsburg in Vaden explains that to mean the entire controversy between the parties. Taylor versus Anderson says that what constitutes arising under must be determined from what necessarily appears in the plaintiff's statement of his own claim. So if we look back to the original state court petition, then those parties are not diverse. But I mean, if the state court ordered, let's say we sent it back, sits in the state court, state court ordered the arbitration, Aviles, or however you pronounce that, he wouldn't go. It would just be ADT and the Richmonds that would go to arbitration. So that's, I think, Judge Smith's point. The arbitration piece is just those two. The overall what went wrong case involves Aviles. But the case about whether we're supposed to arbitrate and what the arbitration will accomplish, they can't force Aviles into the arbitration. Not a signatory. I think that's right. I think also that because we have to look back at how the plaintiff formed the case in the petition, that that would actually control. And again, those parties are not diverse. I think that really this is an issue of Appalant trying to carve out one small piece of the look-through test away from the rest of. Let me ask that about whether we get to the look-through. Just stepping back, it seems to me that the reason for Vodden is in federal question cases, what the case is about matters. You got to have a federal question. So it matters what it's about. In a diversity case, it doesn't matter a lick what it's about. It could be about a car wreck. It could be about libel. It could be about thousands of different things as long as they are citizens of different state and the amount in controversy is over 75,000. That's all we need. So of course Vodden has to look through because it has to know what the case is about. But in a federal question case, I don't understand why you have to look through in a diversity case because it doesn't matter what the case is about. It only matters whether the parties in the federal court are diverse and the amount in controversy is 75,000 or more. Two points on that. First, I would say is that it's only Congress that has the ability to expand or contract the jurisdiction of the federal courts. And in the wake of Vodden, they have not changed what the calculus would be on subject matter jurisdiction. And they have not made a distinction between federal question or other types of jurisdiction. But the Supreme Court made the point that the arbitration statute itself, this is what had come up at the time. The arbitration statute itself is a federal statute. So is that enough? If I signed an arbitration agreement with somebody from Oklahoma and now I want to file a case that says it should be arbitrated, can I file that in federal court just based on this is a federal arbitration clause? And the answer to that is no. So that's why if you don't have diversity jurisdiction, you've got to find some other federal question. Oh, this was a case about Title VII. Then we have a federal question. Then we also have the arbitration clause and so on. So that's why there's the focus on we need jurisdiction separate from this statute, not by this statute. And that doesn't matter for diversity, right? So I would say that it's unclear for particular. I don't want to go away from your question. My answer would be, yes, it does matter. But if we look at the Eighth Circuit and their decision on a similar fact pattern as in our case, they said it does matter for the amount in controversy, but doesn't matter for diversity of citizenship. That distinction doesn't seem to make any sense. But why would we carve out one tiny piece just for the diversity of citizenship and completely diverse parties when an amount in controversy is enough? Well, I mean, you can always claim something was fake, that you sued in state court for a $10,000 suit on a note, and somebody is trying to bring that claim in federal court for arbitration, claiming that it's really a case about $400,000. So there, you might just say, look, that's fake. That's not what we're talking about. That's not what the case is about. I could see that. But that isn't the arbitration jurisdiction issue. The issue is that the federal statute on arbitration does not itself give federal courts jurisdiction. So they need jurisdiction from somewhere else. And that's why I think the look-through matters on the federal question. Is this really a federal case? My dad always told me, don't make a federal case out of everything. So is this a federal? Having no idea, I would end up here. But anyway, is this a federal case or not? But that doesn't matter for diversity. But I think it should matter for diversity. Because when we look at diversity, I mean, that should be treated no different than other subjects when we're analyzing subject matter jurisdiction. It's in the statute just the same as federal question, just the same as the other component of diversity jurisdiction with amounting controversy. And the legislature has made no distinction between amounting controversy and complete diversity in this context. So I don't think that we should do that here either. Well, if I sell you a widget for $100,000 for a written agreement, and you and I agree on the price and the product, and we agree that any disputes shall go to arbitration, then this dispute would go to arbitration and we could get into federal court if you and I lived in different states, right? Why not? We look only to the parties, to the arbitration. Well, because here under Vodden and trying to maintain the limited jurisdiction of federal courts, we have made that distinction. And this court thereafter has made that distinction again and again in the context of rightness and positions under other sections of the Federal Arbitration Act. And so why, then, do we carve out this one piece and leave the law uncertain? Well, because you have hearings before the arbitrator or the arbitration panel, and party A and party B are there. And they're the only people who are involved in getting that arbitrable dispute resolved. So why should anything else matter other than the fact that those two parties are from different states for purposes of federal jurisdiction? Because this, again, is a matter of how the plaintiff has stated his claim. And in this case, the Richmonds stated their claim in state court, included a non-diverse individual in the case. And it's not like ADT doesn't have a remedy on this issue in state court. They would presumably raise this argument again in state court. But it's a matter of ADT getting to select which forum they prefer. And that's something that we shouldn't be doing. But I mean, the problem is in state court, if they follow, assuming that there's no defense to this arbitration clause, they would send the Richmonds and ADT to arbitration and then either put on hold or try separately the Avila's case. So that's the practical. If we're going to look at what's practical, look through to what's practical, that's what's practical. And I understand that completely. I would also look to what this particular case would mean for other cases outside of this context as well. If we're going to carve out this exception for complete jurisdiction, then it's not just in this one case, but it's going to affect all the others that come up hereafter. And to have that exception without a good reason, just again, it leaves the law uncertain. Seems like an arbitrary result when we look at the way that this court has said. But aren't we creating a circuit split if we go your way? You would be creating a circuit split. Shouldn't we at least limit that circuit split if we're going to do it? I mean, you said, why would you want to create an exception? Well, heck, we're creating a circuit split. I mean, shouldn't we at least limit the split? In this case, I don't believe so. Because instead, the circuit split is considered in light of the Vodun language and following the steps that laid forth by the Supreme Court. And the other cases in this same court. For instance, we're in Lower Colorado River Authority versus Papaloodie Creek II, when this course extended that doctrine to ripeness. The court said that Vodun should apply to any of the reasons subject matter jurisdiction may be lacking. So moving back to my second main reason that the subject matter jurisdiction must be established before we get to the presumption in favor of arbitration. Now, the appellants rely heavily on a federal court's long-settled presumption favoring arbitration. However, this puts the cart before the horse. Where there is no jurisdiction, questions of favoring arbitration are never reached. The tension between the limited nature of federal jurisdiction and the presumption towards arbitrability must be resolved in favor of limiting jurisdiction. At its core, this reasoning falls back principles of federalism and states' rights. And ADT is not without recourse, as I've said. It may still raise this issue again in state court, where its remedy is similarly robust as it would be in the federal courts. And allowing a different result essentially condones form shopping for ADT. But the Federal Arbitration Act does not allow parties to recharacterize an existing controversy to gain access to the federal courts to compel arbitration. And the federal courts cannot grant themselves jurisdiction without a congressional mandate. Federal courts are courts of limited jurisdiction, and they must look to federal statutes to establish jurisdiction over a certain controversy. The FAA does not itself grant jurisdiction over matters involving it. Rather, subject matter jurisdiction must be found through federal question or complete diversity. The Federal Arbitration Act grants federal jurisdiction only when federal courts would have jurisdiction of the subject matter of a suit arising out of the controversy of the parties. In Vodden v. Discover Bank, this issue was clarified to mean the entire controversy between parties. And though Vodden dealt with a federal question issue, the Federal Arbitration Act makes no distinction between the different kinds of subject matter jurisdiction. And there is no good reason for the federal courts to manufacture a distinction in order to expand the reasonable scope of their jurisdiction, and rather it's Congress's province to expand or contract the jurisdiction of the federal courts. They know how to do it, and they have refrained since the Vating case. Because Vodden reasonably limits federal jurisdiction, the look-through test should be used here to determine that diversity jurisdiction is defeated. And for these reasons, a district court correctly applied the look-through test to determine complete diversity does not exist in this matter. I thank you for your time. Thank you, Mr. Wangler. Mr. Ebelin, you've saved time for rebuttal. Since the Moses Cohn case from the Supreme Court in 1983, there have been six federal appellate courts who have not applied a look-through approach, declined a look-through approach in diversity cases. Nothing about the Vodden case changed that. And this court today should not create a circuit split by becoming the first federal circuit court to extend Vodden to diversity cases. If there are no further questions from the panel, I would ask that the judgment of the district court be reversed and remanded. Thank you. Thank you. Your case is under submission.